IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JERREL T. GLENN, | ) | CASE NO. 1:13CV2574 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| JASON BUNTING, *Warden*, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Jerrel T. Glenn, ("Petitioner" or "Glenn") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Glenn is detained at the Marion Correctional Institution, having been found guilty by the Cuyahoga County, Ohio, Court of Common Pleas, following a bench trial, of four counts of felonious assault and two counts of aggravated robbery, all counts with one- and three-year firearm specifications.  Doc. 8-2, pp. 27-28.[1]  *State v. Glenn*, No. CR-10-535072-A (Cuyahoga Cty. Common Pleas Ct. filed August 5, 2011).  The trial court merged two felonious assault counts pertaining to one victim; two felonious assault counts pertaining to a second victim; and the one- and three-year firearm specifications on each count.  Doc. 8-2, pp. 27-28.  On August 4, 2011, the court sentenced Glenn to a total of seven years on the assault and robbery counts and a total of nine years on the firearm specifications, to be served consecutively, for an aggregate total of sixteen years in prison. Doc. 8-2, pp. 27-28.

On November 20, 2013, Glenn filed his petition for writ of habeas corpus setting forth four grounds for relief.  Doc. 1, pp. 5-9.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth

---

[1]  Doc. page citations are to ECF Doc. page numbers.

more fully below, Grounds One, Three and Four are not cognizable and Ground Two fails on the merits.  Thus, the undersigned recommends that Glenn's petition for writ of habeas corpus (Doc. 1) be **DISMISSED in part** and **DENIED in part**.[2]

## I. Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2878 (20*09).  The Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio, set forth the facts as follows:[3]

> {¶ 2} In March 2010, Glenn was charged with six counts of kidnapping, two counts of attempted murder, four counts of felonious assault, and five counts of aggravated robbery. All the charges included one- and three-year firearm specifications. The indictment alleged a conspiracy to rob and shoot Kenneth Elsleger ("Kenneth"), who was known to carry large amounts of cash.

> {¶ 3} At a bench trial, Kenneth testified that on the night of the shooting, he had gone out drinking with Glenn, his brother Joseph Elsleger ("Joseph"), and two friends, Mario Galipo ("Galipo") and Samantha DiVincenzo ("DiVincenzo"). After stopping at the Lido Lounge, the group went to Scorekeeper's Lounge ("the bar") in Parma and returned to Kenneth's apartment building at 2:30 a.m. When Kenneth parked the car, Glenn exited the vehicle and quickly disappeared. Galipo and DiVincenzo, who had been arguing, walked over to Galipo's car so DiVincenzo could retrieve items from the trunk. Joseph accompanied the couple to the car to help DiVincenzo carry these items.

> {¶ 4} Meanwhile, a man wearing a hooded sweatshirt confronted Kenneth in the parking lot and ordered him to empty his pockets. Kenneth raised his hands. The man shot a gun into the air and ripped a necklace from Kenneth's neck. Joseph heard the commotion and returned to assist Kenneth. Joseph did not see the gunman's face but recognized the gun as a Glock firearm. To prevent the gunman from shooting Kenneth, Joseph grabbed the man's arm. Galipo observed the struggle and pulled Joseph off the gunman. The gunman

---

[2] The grounds in the petition that are procedurally defaulted result in a dismissal; the grounds in the petition that are addressed on the merits result in a denial.

[3] The facts are taken from the Eighth District Court of Appeals' decision *State v. Glenn*, No. CR-535072 (Ohio Ct. App. July 5, 2012); 2012 WL 2580773 (Ohio Ct. App. July 5, 2012). Glenn has not demonstrated by clear and convincing evidence that the state court's factual findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

shot Joseph in the stomach and fled. During the struggle, the gunman also shot Kenneth in the neck. Kenneth sustained a spinal cord injury, which resulted in quadriplegia.

{¶ 5} DiVincenzo called the police. Officer Daniel Kravanis ("Kravanis") of the Parma Heights police, responded to the scene. Kravanis testified that there was a "fresh blanket" of snow on the ground and that he observed a single set of footprints leaving the scene. He followed the footprints past two apartment complexes, through a parking lot, and up to the entrance of another apartment building.

{¶ 6} Although Kenneth was the only witness who saw the gunman's face, all the witnesses agreed the suspect was a stocky, white, balding male, approximately 5′6″ tall, and wearing a hooded sweatshirt. When Kravanis reached the end of footprints, he observed a person who matched the description. This person, who was later identified as Adam Cassano ("Cassano"), told Kravanis that he had just arrived at the apartment. Moments later, a second man, who was later identified as Glenn, exited the building and greeted Cassano. In response to questioning, Glenn told Kravanis he had been with his friends on the third floor all night. However, when Kravanis questioned the men in the apartment, they informed him that Glenn had just arrived, and that Cassano had been with them in the apartment all night.

{¶ 7} Detective Daniel Heinz ("Heinz") of the Parma police testified that during his investigation of the crime scene, he found a "fired bullet" and two spent shell casings near a blood stain in the parking lot. Jonathan Gardner ("Gardner"), a firearms expert from the Bureau of Criminal Investigation, testified that the fired bullet and the shell casings recovered from the scene came from a 9mm Glock firearm.

{¶ 8} Glenn told police he intended to walk home from Kenneth's apartment upon their return from the bar. Parma police detective Michael Klein ("Klein") determined that Glenn's residence was located midway between the bar and Kenneth's apartment, and that the distance between Kenneth's and Glenn's apartments was approximately two miles. He doubted Glenn's claim that he intended to walk home on a cold snowy night at 2:30 a.m. after a night of drinking when Kenneth could have easily dropped him off as they passed his residence on the way home. Further, at a police interview, Glenn denied leaving his car at Kenneth's address. However, further investigation revealed that Glenn's car was in fact parked at the crime scene.

{¶ 9} As a result of numerous inconsistencies in his story, police suspected Glenn was involved in the shooting and obtained a record of his cell phone activity. These records showed that he sent and received several text messages to the same phone number shortly before the shooting. The messages seemed to direct the recipient to the victims' location.

{¶ 10} The State called John Brogan of Verizon Wireless to verify the authenticity of Glenn's cell phone records and the records of the unidentified recipient of Glenn's messages. The recipient used a Boost Mobile cell phone ("Boost Mobile phone"), which is a pay-as-you-go phone that keeps no subscriber information. The Verizon records established that Glenn periodically informed the user of the Boost Mobile phone of his whereabouts and activities during the night. One message from the Boost Mobile phone

3

to Glenn's phone stated: "Keep me updated." A message from Glenn's phone to the Boost Mobile phone stated: "I'll call you again once I get a chance." At 1:24 a.m., a message from the Boost Mobile phone to Glenn's phone asked: "Which complex?" Moments later, a message from Glenn's phone replied: "It's in Forrest Ridge. You would see my car." At 1:31 a.m., a message from the Boost Mobile phone stated: "I'm walking around here. All the cars got snow on them by the pools or farther download." A message from Glenn's phone responded, "My car right there." Still unable to find Glenn's car, the recipient of Glenn's messages complained: "There are a lot of buildings is BT the side street?" Finally, at 2:31 a.m., a message from Glenn's phone informed: "We on our way."

{¶ 11} Police further discovered that the Boost Mobile phone made calls to a landline telephone at Cassano's mother's house, where Cassano lived. The day after Cassano was interviewed by police, Glenn called the Boost Mobile phone, received no answer, and immediately called the landline at the Cassano home. Using this information, the police obtained a search warrant, searched the Cassano home, and found a large quantity of firearms. Detective Klein testified that he also recovered a clip belonging to a nine millimeter Glock handgun and a photo of Cassano and Glenn with an identified female. The firearm used in the crimes, however, was never recovered.

*State v. Glenn*, 2012 WL 2580773, at *1-2 (Ohio Ct. App. July 5, 2012).

## II. Procedural Background

### A.  State Trial Court

On March 23, 2010, a Cuyahoga County Grand Jury indicted Glenn and his co-defendant Adam Cassano on six counts of kidnapping, O.R.C. §§ 2905.01(A)(2),(3)& (B)(2) (counts 1-2, 8-9 and 15-16); two counts of attempted murder, O.R.C. §§ 2923.02, 2903.02(A) (counts 3 and 10); four counts of felonious assault, O.R.C. §§ 2903.11(A)(1), 2903.11(A)(2) (counts 4-5, 11-12); and five counts of  aggravated robbery, O.R.C. §§ 2911.01(A)(1), (A)(3) (counts 6-7, 13-14 and 17).  Doc. 8-2, pp. 1-17.  All charges carried a one- and three-year firearm specification. Doc. 8-2, pp. 3-7, 10-14, 17.  Glenn pled not guilty to all charges.  Doc. 8-2, p. 20.

On June 14, 2011, the case was tried to the bench.  Doc. 8-2, p. 21; 8-3, p. 23.  During trial, Glenn moved for acquittal under Crim. R. 29 and the court denied the motion.  Doc. 8-2, p. 23.  On June 29, 2011, the trial court found Glenn guilty of the felonious assault of Kenneth Joseph Elsleger (counts 4-5 and 11-12) and the aggravated robbery of Kenneth Elsleger (counts

6-7) with all the attached gun specifications.  Doc. 8-2, pp. 24-25.  Glenn was found not guilty of
the remaining charges.  Doc. 8-2, pp. 24-26.

On August 4, 2011, the trial court sentenced Glenn to an aggregate term of 16 years in
prison.  Doc. 8-2, pp. 27-28.  The court merged counts 4 and 5 and imposed a two-year sentence
for the felonious assault of Kenneth Elsleger; merged counts 6 and 7 and imposed a 3-year
sentence for the aggravated robbery of Kenneth Elsleger; merged counts 11 and 12 and imposed
a 2-year sentence for the felonious assault of Joseph Elsleger; and merged the two firearm
specifications for each of the three offenses.  Doc. 8-2, p. 28.  Thus, a 3-year sentence for the
firearm specification was to be served before each base sentence, and all sentences were to be
served consecutively.  Doc. 8-2, p. 28.

## B.  Direct Appeal

On September 14, 2011, Glenn, through new counsel, filed a notice of appeal and leave
to file a delayed appeal with the Eighth District Court of Appeals.  Doc. 8-2, pp. 29, 51.  The
state Court of Appeals granted leave to file a delayed appeal.  Doc. 8-2, p. 52.  In his brief, Glenn
raised the following assignments of error:

> 1. The verdict and judgment of the trial court are against the manifest weight of the
> evidence.
>
> 2. The evidence below was legally insufficient to sustain verdicts of guilty.
>
> 3. The trial court committed reversible error by denying the appellant due process of law
> in admitting recorded out of court text message conversations.
>
> 4. The trial court erred when it sentenced appellant to three consecutive three year terms
> for firearm specifications.

Doc. 8-2, p. 57.  On July 5, 2012, the Court of Appeals overruled Glenn's assignments of error
and affirmed the judgment of the trial court.  Doc. 8-2, p. 111.

### C.  Ohio Supreme Court

On August 17, 2012, Glenn, proceeding *pro se*, appealed to the Ohio Supreme Court.

Doc. 8-2, p. 126.  He presented four assignments of error:

1. Did the Eighth District Court of Appeals decision violate Appellants Constitutional Rights pursuant to the Standard of review when presented with Manifest Weight argument?

2. Did the Eighth District Court of Appeals err[] by affirming the trial courts erroneous decision to render a verdict without the required proof beyond a reasonable Doubt?

3. Did the Eighth District Court of Appeals decision to allow text messages conversations violated Appellants Constitutional Right to Due Process as Guaranteed by the Sixth Amendment to the United States Constitution.

4. Did the Eighth District Court of Appeals violate Appellants Constitutional Right by failing to reverse[] the multiple Firearm specifications that all arose from the same transaction?

Doc. 8-2, p.129.  On November 7, 2012, the Ohio Supreme Court denied leave to appeal and

dismissed the appeal as not involving any substantial constitutional question.  Doc. 8-2, p. 159.

### D. Application to Reopen

On October 1, 2012, Glenn, *pro se*, applied to reopen his direct appeal pursuant to App.

R. 26(B) based on an ineffective assistance of appellate counsel claim.  Doc. 8-2, p. 160.  He

alleged that his appellate counsel was ineffective for not raising the following errors on direct

appeal:

1. Trial counsel was ineffective for failure to object at trial to the multiple firearm sentences imposed on appellant at trial.

2. Trial coun[sel] was ineffective for failing to request for complicity or a lessor included offenses of attempt[] as the underlying offense.

3. Trial counsel was ineffective for failing to raise at trial the multiple offenses R.C. 2941.25 that were all committed at the same time which were allied offenses or the trial court committed plain error 52(B).

6

Doc. 8-2, pp. 161-164.  On April 19, 2013, the Ohio Court of Appeals denied Glenn's application to reopen.  Doc. 8-2, p. 179.  The Court of Appeals stated, "Glenn has failed to demonstrate a 'genuine issue' as to whether he possesses a 'colorable claim' of ineffective assistance of appellate counsel. Clearly, appellate counsel was not ineffective on appeal."  Doc. 8-2, pp. 187-188.

On June 27, 2013, Glenn, *pro se*, appealed this decision to the Ohio Supreme Court, raising the same claims.  Doc. 8-2, p. 191-192.  On September 25, 2013, the Ohio Supreme Court declined to accept Glenn's appeal.  Doc. 8-2, p. 214.

### E. Federal Habeas Petition

On November 20, 2013, Glenn, *pro se*, filed a petition for a writ of habeas corpus.  Doc.

1.  He listed the following grounds for relief:

> **Ground One:** With little to go on in terms of admissible evidence it is not clear how the trial court could have rendered guilty verdicts in this case. In light of the trial court's guilty verdicts being against the manifest weight of the evidence it is submitted that this court must reverse the decision of the trial court in order to avoid a manifest injustice against appellant.

> **Ground Two**: Although the evidence must be viewed in a manner most favorable to the state, the verdict may not rest on guess or conjecture. The evidence analyzed in Appellant's First Assignment of Error is incorporated here by reference and need not be repeated. However, it is clear that under any reasonable view of the evidence it was insufficient to sustain a conviction as to any count. Under such circumstances reversal is required.

> **Ground Three**: The state placed great emphasis on the phone records in attempting to connect Appellant as co-conspirator with alleged principal Adam Cassano in the commission of the crimes. Their improper admission constitute[s] great prejudice to appellant. In light of the above the verdict of the trial court must be reversed.

> **Ground Four**: In the present case, testimony from the victims showed that the gunshots were not separate in time or space but were fired in rapid succession in the direction of the victims. As such, the trial court committed plain error in sentencing Appellant to three consecutive three-year terms for the gun specifications when it should have merged the firearm specifications for the sentencing with one three-year term.

Doc. 1, pp. 5-9.  On March 6, 2013, Respondent filed a Return of Writ.  Doc. 8.  Respondent argues that Grounds One, Three and Four are non-cognizable and that Ground Two fails on the merits.  Doc. 8, pp. 11-19.  Glenn did not file a Traverse.

### III. Law

#### A.  Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to Glenn's habeas petition because he filed it after the effective date of the AEDPA.  *28 U.S.C. § 2254*; *Stewart v. Erwin*, *503 F.3d 488, 493 (6th Cir. 20*07).  Under the AEDPA, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr., 463 F.3d 426, 430 (6th Cir. 20*06).  "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States, 532 U.S. 374, 381 (20*01). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson, 460 F.3d 789, 806 (6th Cir. 20*06).  Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id. at 806* (quoting *Engle v. Isaac, 456 U.S. 107,* 125 n.28 (1982)).  In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams, 460 F.3d at 806*.

In order to obtain habeas relief under  *28 U.S.C. § 2254(d),* a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). *Id*.

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision, as well as legal principals and standards flowing from Supreme Court precedent.  *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied Supreme Court precedent or clearly established federal law.  *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state

court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

## IV. Claim Analysis

### A.  Claims Overview

Glenn sets forth four grounds for relief in his petition. Doc. 1, pp. 5-9.  Respondent argues that Grounds One, Three and Four are non-cognizable and that Ground Two fails on the merits.  For the reasons that follow, the undersigned concludes that Glenn's first, third and fourth grounds are non-cognizable and that his second ground fails on the merits.

#### 1. Ground One is not cognizable

In Ground One, Glenn argues that the trial court's guilty verdicts were against the manifest weight of the evidence.  Doc. 1, p.5.  Federal habeas corpus relief is available only to correct federal constitutional violations.  *28 U.S.C. § 2254(a)*; *Wilson v. Corcoran, 562 US 1, 5 (2010)*.  A claim that a conviction is against the manifest weight of the evidence rests solely on state law and is not a cognizable claim in a federal habeas petition.  *See Ross v. Pineda, 2011 WL 1337102, at *3 (S.D.Ohio April 11,* 2011) ("Whether a conviction is against the manifest weight of the evidence is purely a question of Ohio law," citing *State v. Thompkins, 678 N.E.2d 541 (Ohio 1997)*).  Because Glenn's manifest weight of the evidence claim in Ground One is not cognizable in a federal habeas corpus proceeding, it should be dismissed.  *See id.*

#### 2. Ground Two fails on the merits

In Ground Two, Glenn argues that the evidence was insufficient to sustain a conviction as to any count.  Doc. 1, p. 6.  On federal habeas review, a state court's determination regarding a sufficiency of evidence claim is entitled to a "double layer" of deference.  *Tucker v. Palmer, 541*

F.3d 652, 656 (6th Cir. 2008).  The first layer of deference goes to the factfinder; the second goes to the state reviewing court as required by AEDPA.  *Id.*

Deference is due to the decision of the trier of fact because the standard, announced in *Jackson v. Virginia*, 443 U.S. 307 (1979), is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  The standard is not whether the trier of fact made the correct determination but, rather, whether it made a rational decision to convict or acquit.  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  In making this determination, a court does not reweigh the evidence or determine the credibility of the witnesses.  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).  "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt."  *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence[.]").

The second layer of deference goes to the state appellate court.  Even if a review of the evidence were to lead to the conclusion that a rational trier of fact could not have found guilt beyond a reasonable doubt, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable."  *Brown*, 567 F.3d at 205; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

Here, the Ohio Court of Appeals discussed the evidence presented in considering Glenn's sufficiency of the evidence claim:

{¶ 16} Glenn claims the text messages constituted social communication between friends rather than aiding and abetting a crime. However, as previously stated, messages sent from Glenn's phone to the Boost Mobile phone directed the recipient to the victims' location at the same time the shooting occurred. The recipient of Glenn's messages not only asked for periodic updates on Glenn's present location, but also sought clarification of the location of Glenn's car. The last message sent from Glenn's phone before the robbery simply stated: "We on the way." None of these messages, however, were offered for the truth of their contents. Thus, they did not constitute hearsay.

{¶ 17} DiVincenzo testified that she observed Glenn send and receive numerous text messages the night of the shooting. While they were driving back to Kenneth's apartment from the bar, she observed Glenn "being sneaky on the phone, like trying to hide it in-between his legs." The text messages coupled with the presence of an armed robber waiting for victims to arrive at 2:30 a.m. on a cold snowy night allowed the trier of fact to reasonably conclude that Glenn directed the robber to this location at the precise time the group returned. It is doubtful that a random robber would lie in wait in the cold at 2:30 a.m. unless he knew the victim would be arriving shortly.

{¶ 18} Finally, Glenn argues that because the evidence linking Cassano to the crime is insufficient, the evidence of Glenn's participation in the crime is likewise insufficient. We disagree.

{¶ 19} Glenn asserts that because none of the witnesses at the shooting could identify Cassano from the photo arrays, the evidence failed to prove that Cassano was the gunman. However, the State used circumstantial evidence to prove Cassano's role in the crimes. Although the witnesses were unable to identify Cassano as the shooter, they all provided the same general description of his height and weight, baldness, and hooded sweatshirt.

{¶ 20} Moreover, circumstantial evidence proved Cassano used the Boost Mobile phone on the night the crimes were committed. First, Officer Kravanis met him near the crime scene shortly after the shooting. Cassano falsely informed Kravanis that he had just arrived at the apartment, apparently attempting to distance himself from the crime. The cell phone records showed that someone using the Boost Mobile phone called the Cassano house. The records also showed that when Glenn called the Boost Mobile phone and received no answer, he immediately called the landline at Cassano's home, obviously trying to reach the person who usually answers the Boost Mobile phone. Each of these facts, considered alone, is innocuous. However, when all the facts are considered together, they tell the story of how Glenn and Cassano conspired to rob Kenneth, whom they knew carried a large amount of cash. It is not clear whether Joseph was a premeditated target, but the evidence is clear he was a victim of their conspiracy.

{¶ 21} Therefore, there is sufficient evidence to support the convictions, and the convictions are not against the manifest weight of the evidence.

*Glenn*, 2012 WL 2580773, at *3-4.

Pursuant to the standard announced in *Jackson*, the Ohio Court of Appeals is entitled to view the evidence against Glenn, including the text messages, in a light most favorable to the prosecution. 443 U.S. at 319.  Based on the evidence summarized by the Court of Appeals, a rational factfinder could have found that Glenn was complicit in the aggravated robbery and felonious assault charges beyond a reasonable doubt.  The state Court of Appeals' reliance on circumstantial evidence against Cassano is also permissible. *See Durr*, 487 F.3d at 449.  Because Glenn has not demonstrated that the Ohio Court of Appeals' decision is contrary to or an unreasonable application of clearly established federal law, the undersigned recommends that Ground Two be denied.

### 3. Ground Three is not cognizable

In Ground Three, Glenn argues that the phone records used against him at trial were inadmissible.  Doc. 1, p. 8.  "[E]rrors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983).  However, "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Id*.; *see also Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  "[C]ourts have defined the category of infractions that violate fundamental fairness very narrowly." *Id*. (internal quotation marks and citation omitted).  A state court ruling on an evidentiary matter does not rise to the level of a due process violation unless it "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id*.

Because the trial court relied on Ohio evidentiary rules in admitting the text messages at Glenn's trial, the trial court's ruling is only cognizable on federal habeas review if it can be said to offend a "principle of justice so rooted in the traditions and conscience of our people as to be

ranked as fundamental." *Id*. *See Glenn*, 2012 WL 2580773, at * 4-5 (relying on Ohio Rules of Evidence).  The Ohio Court of Appeals stated that the text messages were not admitted for their truth and were not, therefore, hearsay.  *Id*. at *4; *2 (explaining how the cell phone records demonstrated that Glenn periodically informed Cassano of the victims' movements and directed Cassano to the parking lot).  The state Court of Appeals added that, even if the text messages are hearsay, they fall under an exception to the hearsay rule.  *Id*.  The court cited Ohio Rule of Evidence 901(A) as requiring the proponent of evidence to lay a foundation by demonstrating authenticity or genuineness by direct or circumstantial evidence.  *Id*.  at *5.  The court also cited Ohio Rule of Evidence 803(6), providing a hearsay exception for regularly recoded business records.  *Id*.  The state Court of Appeals described how the state properly adhered to these rules during Glenn's trial:

> The State called a Verizon representative, John Brogan, to lay the foundation and to authenticate Glenn's cell phone records. Brogan, testifying as a custodian of records, stated that Verizon regularly maintains a detailed list of the identities of their customers and their customers' cell phone usage. He explained that computers automatically record incoming and outgoing calls, call duration, and content. There was no evidence to suggest that the automatic recording of cell phone activity was unreliable. Moreover, he testified that Verizon maintains these records in the regular course of business for billing and rate plan purposes, and Verizon often makes this information available to police as a courtesy to law enforcement. Based on his testimony, we find that Brogan properly authenticated the cell phone records as business records, which are excepted from the hearsay rule.

*Id*.  Glenn does not explain how the admission of the text messages at his trial was so egregious that it was fundamentally unfair.  *See Walker*, 703 F.2d at 962.  Accordingly, the undersigned recommends that Ground Three as presented is non-cognizable and should be dismissed.

### 4.  Ground Four is not cognizable

In Ground Four, Glenn argues that the trial court erred when it sentenced him "to three consecutive three-year terms for the gun specifications when it should have merged the firearm specifications for the sentencing with one three-year term."  Doc. 1, p. 9.  In support of his

position, Glenn asserts that "the gunshots were not separate in time or space but were fired in rapid succession in the direction of the victims." Doc. 1, p. 9. In other words, because the sentences for the firearm specifications arose from the same act, they should have all been merged into one, three-year sentence.

The Ohio Court of Appeals considered Glenn's argument, which relied on R.C. § 2929.14(D)(1), and found that, under R.C. § 2929.14(D)(1)(g), the trial court's sentence was not erroneous. *Glenn*, 2012 WL 2580773, at *6. As explained above, federal habeas relief is not available to correct errors of state law. *See Wilson*, 562 US at 5. "More particularly, a claim that the trial court violated state law when sentencing a prisoner . . . is not cognizable in a federal habeas corpus proceeding." *Wilson v. Warden, Ross Corr. Inst.*, 2013 WL 6859869, at *19 (N.D.Ohio Dec. 30, 2013) (quoting *Mayse v. Morrow*, 2008 WL 782615, at *8 (M.D.Tenn. March 20, 2008)); *see also Twitty v. Warden*, 2006 WL 2728694, at *21 (S.D.Ohio Sept. 22, 2006) (allegation that the trial court erred by separating gun specifications per R.C. § 2929.14 is a state law claim and not cognizable on federal habeas review). Because Glenn relies on a state statute to argue that the trial court erred in sentencing him on the gun specifications, his assertion is a challenge pursuant to state law and not cognizable. Accordingly, Ground Four should be dismissed.

## V. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Petitioner's habeas petition be **DISMISSED** in part and **DENIED** in part.  Grounds One, Three and Four should be dismissed as not cognizable in federal habeas review; Ground Two should be denied on the merits.


Dated: March 19, 2015

Kathleen B. Burke
United States Magistrate Judge


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).